**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **NORBERTO PANDO ARANDA,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Cause No. EP-25-CV-316-LS** |
| | § | |
| **CHARISMA EDGE,** *Warden*, *FCI La Tuna*, | § | |
| **Respondent.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

*Pro se* Petitioner Norberto Pando Aranda, Federal Prisoner Number 18311-051, challenges

the execution of his sentence through a petition for a writ of habeas corpus under 28 U.S.C. §

2241.[1] His opposed petition is dismissed without prejudice because he failed to exhaust his

administrative remedies.

## BACKGROUND

Aranda is a 73-year-old prisoner confined at the La Tuna Federal Correctional Institution

("FCI La Tuna") in Anthony, Texas, which is within the jurisdiction of this Court.[2] His projected

release date is January 5, 2031.

Beginning in December 2012 and continuing until May 2013, Aranda conspired with at

least five others to possess with intent to distribute 1,208.56 kilograms of marihuana.[3] He was

arrested on December 3, 2014, and remained in custody until his sentencing on May 12, 2015.[4]

He pled guilty, pursuant to a plea agreement, to conspiracy to possess with intent to distribute more

than 100 kilograms but less than 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§

---

[1] Pet'r's Pet., ECF No. 1.
[2] *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 18311-051, last visited June 24, 2026).
[3] *United States v. Aranda*, 4:14-cr-00629-DC (W.D. Tex.), Factual Basis, ECF No. 153 at 1.
[4] *Id*., Presentence Investigation, ECF No. 199 at 1.

841(a)(1), (b)(1)(B), and 846.[5] In addition, he pled true to a sentencing enhancement filed by the Government based on his prior conviction for aiding and abetting the distribution of cocaine. He was sentenced to 240 months' imprisonment, with credit for the time served while in pretrial custody for the offense, followed by ten years' supervised release.[6]

Aranda now claims that he was engaged in productive activities while in federal custody between his arrest on December 3, 2014, and July 31, 2025, and was therefore entitled to First Step Act Earned Time Credits ("FTCs").[7] He argues that if the Bureau of Prisons ("BOP") had properly applied his accrued FTCs, he would have been placed in a residential reentry center on or about January 15, 2024.[8] He suggests that he has not exhausted his administrative remedies[9] but argues that exhaustion is not required in this case. He asks the Court to order Warden Edge to "provide all the Good Time, First Step Act, and Second Chance Act Credits that [he] is entitled to."[10]

Warden Edge agrees that Aranda has not exhausted his administrative remedies and asks the Court to dismiss his petition on this ground alone.[11] Moreover, she asserts Aranda was not entitled to FTCs before the First Step Act became law on December 21, 2018. Finally, she maintains the BOP has calculated Aranda's Good Time, First Step Act, and Second Chance Act Recommended Placement Date correctly, his claims are without merit, and his petition should be dismissed.

Aranda disagrees and suggests "the requirement as to the exhaustion of Administrative

---

[5] *Id.*, Presentence Investigation, ECF No. 199 at ¶ 3.
[6] *Id.*, J. Crim. Case, ECF No. 228.
[7] Pet'r's Pet., ECF No. 1 at 1.
[8] *Id.* at 3.
[9] *Id.* at 4–5.
[10] *Id.* at 5.
[11] Resp't's Resp., ECF No. 3 at 2.

Remedies is part of the scheme to defraud the United States, as well as to prolong the imprisonment of inmates."[12] He insists the calculation of his time credits is incorrect and the Court should not defer to the BOP's implementation of the First Step Act's time credit provisions.[13]

## STANDARD OF REVIEW

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus."[14] A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241.[15] To prevail, a prisoner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."[16]

## ANALYSIS

### A. Exhaustion

The Fifth Circuit has long held that the BOP should be permitted to administratively rectify an error if it fails to properly calculate a sentence.[17] "In the event that a prisoner feels he has been improperly refused credit for time he has served in … custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the] prisone[r] may only then pursue judicial review of these computations.'"[18]

---

[12] Pet'r's Reply, ECF No. 4 at 4.
[13] *Id.* at 4, 6.
[14] *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)).
[15] *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted).
[16] 28 U.S.C. § 2241(c).
[17] *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991).
[18] *United States v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010) (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through the multi-step BOP exhaustion procedure prior to filing his § 2241 petition.").

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances."[19] And a petitioner bears the burden of demonstrating such circumstances.

Aranda asserts that "[e]xhaustion of [a]dministrative [r]emedies is not required for a petition for habeas corpus."[20] His prison records show that he submitted one administrative remedy request, but its purpose was to alter his education classification.[21] He argues that "[t]o require the exhaustion of administrative remedies in a habeas corpus claim would be to create a rule that abrogates a Constitutional right which is prohibited."[22] He is wrong.[23]

Aranda "must first pursue all available administrative remedies" before seeking relief under § 2241.[24] And his exhaustion in this context means "proper exhaustion," including his compliance with all BOP administrative deadlines and procedures.[25]

The Court finds that Aranda has failed to exhaust his administrative remedies or carry his burden of proving the futility of an administrative review.[26] It notes that dismissal on this basis alone is warranted.[27] But even if Aranda had properly exhausted his claims, the Court would not

---

[19] *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted).

[20] *See* Pet'r's Pet., ECF No. 1 at 4–5.

[21] *See* Resp't's Resp., Ex. 2 (Decl. of Johnna Burrows), ECF No. 3-5 at ¶¶ 11, 12.

[22] Pet'r's Pet., ECF No. 5 at 5.

[23] *Setser*, 607 F.3d at 133.

[24] *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017).

[25] *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

[26] *Fuller*, 11 F.3d at 62 (explaining federal prisoners must exhaust "administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241.").

[27] *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies).

grant him the § 2241 relief he seeks.

### B. Alternatively, Aranda's Petition Lacks Merit

Aranda suggests that Warden Edge has not properly calculated his Good Time Credits ("GTCs"), First Step Act Earned Time Credits ("FTCs"), and Second Chance Act "credits."[28]

### (1) Jail Credits

After a district court sentences a federal offender, the BOP has the responsibility for administering the sentence."[29] The BOP must credit a federal prisoner for the days spent in pretrial custody prior to the imposition of a sentence if that time is not credited against another sentence.[30]

In this case, the BOP gave Aranda 166 days of jail credit for the time he spent in detention from his arrest on December 3, 2014, to his sentencing on May 12, 2015, and for the period between his sentencing and his arrival at his designated BOP facility.[31] The BOP also determined that Aranda's full-term expiration date on his 240-month sentence was November 26, 2034, without the application of any GCTs or FTCs.

### (2) Good Time Credits ("GTCs")

A prisoner serving a term of imprisonment of more than one year may receive 54 days of GTCs for each year of imprisonment.[32]

Based on his 240-month sentence, Aranda is projected to receive up to 1056 days of GTCs

---

[28] Pet'r's Pet., ECF No. 1 at 5.

[29] *United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a)).

[30] 18 U.S.C. § 3585(b); *Leal v. Tombone*, 341 F.3d 427, 428 (5th Cir. 2003) ("The Attorney General, through the Bureau of Prisons (BOP), determines what credit, if any, will be awarded to prisoners for time spent in custody prior to the commencement of their federal sentences.").

[31] Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), Attach 1, Public Information Inmate Data, ECF No. 3-3 at 7; *see* 18 U.S.C. § 3585(b)(1).

[32] 18 U.S.C. § 3624(b)(1).

if he maintains a clean disciplinary record.[33] Applying these GCTs to his full-term expiration date results in a conditional release date via GCTs of January 5, 2032.

### (3) First Step Act Earned Time Credits ("FTCs")

The First Step Act allows an eligible prisoner to earn FTCs toward time in pre-release custody or supervised release.[34] But it requires a prisoner to first undergo "a risk and needs assessment" to establish whether he has a "minimum, low, medium, or high risk for recidivism."[35] It gives qualifying prisoners the opportunity to earn ten days of FTCs for every 30 days of successful participation in Evidence Based Recidivism Reduction ("EBRR") programs and Productive Activities ("PAs").[36] It allows qualifying offenders at a "minimum" or "low risk" of recidivating to earn an additional five days of FTCs if they do not increase their risk levels over two consecutive assessments.[37] It permits qualifying inmates to apply FTCs toward pre-release placement in a residential reentry center or home confinement.[38] And, at the discretion of the Director, it permits qualifying prisoners to apply FTCs toward their early release to supervision.[39]

Aranda was already serving his imposed sentence in BOP custody when the First Step Act was enacted on December 21, 2018.[40] He was initially scored at a minimum-risk recidivism level that same day.[41] So, he began earning ten FTCs for every 30 days of successful participation in EBRR programs and PAs. After he maintained a minimum-risk recidivism level for two consecutive assessments, he began earning an additional five days of FTCs on July 17, 2019.

---

[33] Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), ECF No. 3-2 at ¶ 16.
[34] 18 U.S.C. § 3632(d)(4)(A).
[35] *Id*. § 3632(a)(1).
[36] *Id.* § 3632(d)(4)(A)(i).
[37] *Id*. § 3632(d)(4)(A)(ii).
[38] *Id.* § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c).
[39] 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).
[40] Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), ECF No. 3-2 at ¶ 11.
[41] *See id*., Ex. 1 (Decl. of Bertha Tovar), Attach 2, FSA Time Credit Assessment, ECF No. 3-4.

As of August 29, 2025, Aranda had accumulated 1160 FTCs.[42] Because he has ten years of supervised release following his imprisonment, his first 365 FTCs were applied toward his early release from imprisonment to begin his supervised release. With the application of his 365 FTCs, his statutory release date was amended from January 5, 2032, via GTC release, to January 5, 2031, via First Step Act release.

Aranda's remaining FTCs may be applied to his placement in prerelease custody in a residential reentry center ("RRC") or home confinement ("HC").[43] However, under the First Step Act, he cannot apply these FTCs until his total FTCs are equal to the remainder of his sentence.[44] If Aranda's First Step Act status remains the same, he is projected to earn a total of 1170 FTCs towards his transfer to an RRC or HC.[45] This results in a First Step Act Conditional Placement Date of October 23, 2027. This date reflects the earliest date Aranda could be transferred to prerelease custody based on his accumulated FTCs alone.

**(4) Second Chance Act**

The Second Chance Act authorizes the BOP to *consider*, to the extent practicable, placing inmates in prerelease custody who are nearing the end of their imprisonment.[46] Importantly, the statute only requires the BOP to *consider* placing an inmate in pre-release custody for up to twelve months or in home confinement for up to six months. It does not *require* the BOP to make such a placement. The Second Chance Act does not create any additional "credits."

Moreover, the BOP is responsible for designating "the place of the prisoner's

---

[42] *Id.*, Ex. 1 (Decl. of Bertha Tovar), ECF No. 3-2 at ¶ 12.
[43] *Id.* at ¶ 13.
[44] *Id.*
[45] *Id*. at ¶ 17.
[46] 18 U.S.C. § 3624(c).

imprisonment."[47] Consequently, the BOP—not a court—is the proper place to direct a request for placement in an RRC or HC.[48] Additionally, release from institutional custody to a residential reentry center or home detention "is a change in conditions of confinement and not cognizable under § 2241."[49]

The BOP is considering Aranda for 365 days in pre-release custody pursuant to the Second Chance Act.[50] This creates a Second Chance Act Recommended Placement Date for prerelease custody of January 5, 2030. This Second Chance Act Recommended Placement Date reflects the earliest date Aranda could be transferred to prerelease custody under the Second Chance Act alone, and with no FTCs applied.

**(5) Summary**

In summary, Aranda does not explain how the BOP erred in calculating his projected release date—and the Court, after reviewing the record, sees no errors. Aranda's conclusory allegations that Warden Edge miscalculated his GTCs, ETCs, and improperly denied him early placement in a community-based residential facility under the Second Chance Act are "insufficient for federal habeas relief [because he] has not met Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires a petitioner to plead facts in support of his claims."[51] His argument that he is entitled to Second Chance Act "credits" is based on the

---

[47] *Id.* § 3621(b).

[48] *United States v. Sneed*, 63 F.3d 381, 388 n.6 (5th Cir. 1995) (citing 18 U.S.C. § 3624(c) (providing that the BOP has the authority to "place a prisoner in home confinement")).

[49] *Maldonado v. Rule*, No. 4:24-cv-0971-P, 2025 WL 476256, at *2 (N.D. Tex. Feb. 11, 2025) (citing *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) (explaining a challenge to exclusion from program allowing home confinement is more properly brough as a *Bivens* action)).

[50] Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), ECF No. 3-2 at ¶ 17.

[51] *Murphy v. Dretke*, 416 F.3d 427, 436–37 (5th Cir. 2005); *see also Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("conclusory allegations do not raise a constitutional issue in a habeas proceeding").

erroneous premise that such credits exist.

**CONCLUSIONS AND ORDERS**

The Court concludes that Aranda has failed to exhaust his administrative remedies. It further concludes that his claims lack merit as he has failed to explain how the BOP erred in calculating his projected release date. The Court accordingly enters the following orders:

**IT IS ORDERED** that Petitioner Norberto Pando Aranda's "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**IT IS SO ORDERED**.

**SIGNED** this 6th day of July 2026.

 

_____
**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**

9